Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC<br><br>Peticionario<br><br>v.<br><br>ONE ALLIANCE INSURANCE CORPORATION<br><br>Recurrido | KLCE202201212 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Caso Núm. SJ2019CV10753<br><br>Sobre: Incumplimiento de Contrato de Seguro, Mala Fe y Acción Declaratoria |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Grana Martínez y el Juez Adames Soto.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

I.

PR Asset Porfolio 2013-1 International, LLC., (PRAPI), tenía aseguradas con One Alliance Insurance Corporation (One Alliance), diversivas propiedades sitas en varias regiones de Puerto Rico. Tras el paso del huracán María, el 2 de octubre de 2017 PRAPI presentó ante su aseguradora One Alliance, reclamación por los daños que sufrió. Debido a que la reclamación de PRAPI involucraba múltiples propiedades, acordó con One Alliance atender la reclamación en tres fases que denominaron *1st, 2nd,* y *3rd Claim Submission.* El propósito era llevar el proceso de inspección y ajuste de manera escalonada, para así agilizar la solución de la reclamación.

One Alliance y PRAPI, a través de sus representantes y ajustadores, realizaron las inspecciones de las propiedades incluidas en la reclamación. Ya evaluadas las propiedades del *1st* y del *2nd Claim Submission*, PRAPI sometió a One Alliance el *1st Claim Submission.* En consecuencia, One Alliance le envió a PRAPI el

ajuste con relación a las propiedades objeto del *1st Claim Submission* y parte de las propiedades del *2nd Claim Submission.*

Posteriormente, One Alliance le envió a PRAPI dos (2) cheques como pago del ajuste del *1st Claim Submission.* Sin embargo, el 20 de junio de 2019 One Alliance le envió una carta a PRAPI retractándose del ajuste efectuado con relación al *2nd Claim Submission.* Señaló que, albergaba dudas sobre el interés asegurable de PRAPI en algunas de las propiedades incluidas en la reclamación y solicitó que se le devolviera una porción de lo que había pagado como parte del ajuste del *1st Claim Submission.*

Trabada la controversia, el 6 de septiembre de 2019, PRAPI presentó *Demanda* por Incumplimiento de Contrato de Seguro, Mala Fe y Acción Declaratoria contra One Alliance. El 12 de febrero de 2020, PRAPI presentó *Demanda Enmendada* para atemperar la reclamación a las propiedades sitas en la región judicial de Fajardo.[1] El 22 de marzo de 2020, One Alliance presentó *Contestación a Demanda Enmendada* y posteriormente presentó *Reconvención.* Sin embargo, el Tribunal de Primera Instancia denegó la *Reconvención.* Intimó, que la causa de acción estaba presente al momento de One Alliance contestar la *Demanda.*

Culminado el descubrimiento de prueba, PRAPI presentó *Moción de Sentencia Sumaria Parcial.* Solicitó que se le ordenara a One Alliance emitir los pagos sobre los ajustes del *2nd Claim Submission* y que realizara el ajuste sobre las restantes propiedades. El 22 de agosto de 2022 One Alliance presentó *Oposición a la Moción*

---

[1] Específicamente, las propiedades objeto de la reclamación de PRAPI ubicadas en la Región Judicial de Fajardo son: 1) propiedad número 40587 ubicada en Carr. 983, Km. 5.7, Barrio Sabana, Luquillo, PR; 2) propiedad número 30099 ubicada en Carr. PR 3, Km. 27.5, Barrio Zarzal Abajo, Río Grande, PR; 3) propiedad número 3359 ubicada en el Cond. Monte Flores, Carr. 958, Km. 1.5, Río Grande, PR; 4) propiedad número 40269 ubicada en Alturas de Río Grande, Calle 12 #M564, Río Grande, PR; y 5) propiedad número 40072 ubicada en el Km. 29.3, Marginal de la Carr. Estatal Núm. 3, Lote #55, Parcelas Hato Candal, Barrio Carola, Río Grande, PR.

*de Sentencia Sumaria Parcial.* Planteó que PRAPI había incurrido en fraude e incumplió con su deber de cooperar en la reclamación.

El 5 de octubre de 2022, el Foro primario emitió la siguiente *Orden*:

> Dadas las innumerables controversias de hecho planteadas por la demandada One Alliance Insurance Corporation en su "Oposición a 'Solicitud de Sentencia Sumaria' y 'Relación de Hechos Incontrovertidos Apoyando Solicitud de Sentencia Sumaria' se declara la 'Moción de Sentencia Sumaria Parcial' de la demandante PR Asset Portfolio 2013-1 International, LLC NO HA LUGAR."

Insatisfecho con la determinación del Foro primario, el 4 de noviembre de 2022, PRAPI acudió ante nos mediante *Certiorari*. Aduce que el Tribunal de Primera Instancia cometió los siguientes errores:

> **Primer Error:**
> ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL DE PRAPI SIN EMITIR DETERMINACIONES DE HECHO TAL CUAL LO REQUIERE LA REGLA 36.4 DE PROCEDIMIENTO CIVIL.
>
> **Segundo Error:**
> ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL DE PRAPI Y NO ORDENAR EL PAGO DEL AJUSTE EMITIDO POR ONE ALLIANCE.
>
> **Tercer Error:**
> ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL DE PRAPI A BASE DE LAS MERAS ALEGACIONES DE ONE ALLIANCE SOBRE EL SUPUESTO FRAUDE QUE SUBYACE SU DEFENSA AFIRMATIVA.
>
> **Cuarto Error:**
> ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL DE PRAPI Y NO ORDENAR EL AJUSTE DEL RESTANTE DE LA RECLAMACIÓN.

El 8 de noviembre de 2022, emitimos *Resolución* concediéndole a One Alliance término de treinta (30) días para expresarse sobre el *Recurso* incoado. El 22 de noviembre de 2022, One Alliance compareció. No obstante, debido a la naturaleza del primer error planteado por PRAPI, el 10 de enero de 2023 emitimos *Resolución* concediéndole término de diez (10) días al Tribunal de

Primera Instancia (Hon. Elizabeth A. Rice Dilmé), para que, en cumplimiento con la Regla 36.4 de Procedimiento Civil, fundamentara su decisión del 5 de octubre de 2022. Atendida la *Comparecencia Especial* del Tribunal de Primera Instancia el 18 de enero de 2023, el 19 de enero de 2023, emitimos *Resolución* concediéndole a las partes término de diez (10) días para que se expresaran.

El 20 de enero de 2023, One Alliance presentó *Solicitud de Término y Moción Aclaratoria*. Arguyó que, el caso de autos plantea múltiples controversias de hecho que deben ser atendidas mediante un juicio plenario. Por su parte, el 30 de enero de 2022 PRAPI presentó *Moción en Cumplimiento de Orden*. Posteriormente, el 6 de febrero de 2023, One Alliance presentó *Oposición a Moción en Cumplimiento de Orden.*

Con el beneficio de la comparecencia de las partes y el Derecho, procedemos a resolver.

## II.

## A.

El mecanismo de sentencia sumaria provisto por la Regla 36 de Procedimiento Civil, permite la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, es decir, de aquellos hechos que puedan afectar el resultado de la reclamación bajo el derecho sustantivo aplicable.[2] De manera que, cuando los documentos no controvertidos que acompañan la moción de sentencia sumaria demuestran que no hay una controversia de hechos esenciales y

---

[2] 32 LPRA Ap. V, R. 36; SLG *Fernández-Bernal* v. *RAD-MAN San Juan*, 208 DPR 310 (2021); *Roldán Flores* v. *M. Cuebas* et al*.,* 199 DPR 664 (2018); *Bobé* et al. v. *UBS Financial Services*, 198 DPR 6 (2017).

pertinentes, se prescinde de la celebración de un juicio y por lo tanto, únicamente resta aplicar el Derecho.[3]

Para prevalecer por la vía sumaria, la parte promovente deberá presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.[4] Con ese fin, deberá desglosar los hechos que alega no están en controversia con referencia específica a la prueba admisible y sustancial que lo sustenta.[5] Por el contrario, ante una solicitud de sentencia sumaria el promovido no deberá tomar una actitud pasiva ni descansar solamente en sus alegaciones. Este debe controvertir la prueba presentada por el promovente, mediante contestación detallada y específica sobre aquellos hechos pertinentes acompañada de prueba admisible, y así demostrar que existe una controversia real y sustancial que debe dilucidarse en un juicio.[6]

Si el promovido se cruza de brazos, se expone a que dicten sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo.[7] Ahora bien, si el promovido no contraviene la prueba presentada en la solicitud de sentencia sumaria, no necesariamente significará que procede automáticamente la concesión de la sentencia.[8] Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en Derecho.[9] Es decir, se debe cumplir con el criterio rector de que los hechos incontrovertidos y la evidencia de autos demuestren que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente.[10]

---

[3] *Rosado Reyes* v. *Global Healthcare*, 205 DPR 796 (2020); *León Torres* v. *Rivera Lebrón*, 204 DPR 20 (2020); *Meléndez González* et al. v. *M. Cuebas*, 193 DPR 100 (2015).
[4] *Ramos Pérez* v. *Univisión*, 178 DPR 200 (2010).
[5] *León*, 204 DPR, págs. 41-42; *Roldán*, 199 DPR, pág. 676.
[6] *Abrams Rivera* v. *ELA*, 178 DPR 914, 933 (2010); *Piovanetti* v. *S.L.G. Touma, S.L.G. Tirado*, 178 DPR 745, 774 (2010).
[7] *León*, 204 DPR, págs. 41-42.
[8] *SLG Fernández-Bernal*, 208 DPR; *Piovanetti,* 178 DPR, pág. 174.
[9] *Rosado,* 205 DPR, págs. 808-809; *Audiovisual Lang.* v. *Sist. Est. Natal Hnos.*, 144 DPR 563 (1997).
[10] *Rosado*, 205 DPR, pág. 809.

B.

El negocio de seguros se encuentra revestido de un alto interés público por el rol vital que juega esa industria en la sociedad y economía.[11] El contrato de seguro es aquel mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable de producirse un suceso incierto previsto en el mismo.[12] Al suscribir un contrato de seguros, los aseguradores "asumen la carga económica de los riesgos transferidos a cambio de una prima".[13] Ante ello, es evidente que el propósito de todo contrato de seguro es la indemnización y la protección en caso de producirse el suceso incierto previsto en [e]ste.[14]

El Código de Seguros de Puerto Rico regula las prácticas comerciales de esta industria. Uno de los renglones mayormente regulado por el Código de Seguros de Puerto Rico es el perteneciente a las prácticas desleales y fraude en el negocio de los seguros.[15] Como parte de las prácticas desleales detalladas allí, se encuentran aquellas relacionadas al ajuste de reclamaciones.[16] El Artículo 27.161 del Código de Seguros,[17] regula el ajuste de las reclamaciones e incluye una larga lista de actos que se considerarán como prácticas desleales.

También, el Código de Seguros establece los términos que tienen los aseguradores para completar el ajuste de reclamaciones presentadas por sus asegurados. En específico, el Art. 27.162 del Código de Seguros,[18] dispone:

---

[11] *OCS* v. *Financiera,* 187 DPR 164, 174 (2012).
[12] 26 LPRA § 102.
[13] *Cooperativa de Ahorro y Crédito Oriental* v. *Oquendo Camacho,* 158 DPR 714, 721 (2003).
[14] *S.L.G. Francis-Acevedo* v. *SIMED,* 176 DPR 372, 384 (2009).
[15] *Carpets & Rugs* v. *Tropical Reps,* 175 DPR 615, 632 (2009); *Comisionado de Seguros* v. *PRIA,* 168 DPR 659, 671 (2006); Artículos 27.010-27.270 del Código de Seguros de Puerto Rico, 26 LPRA secs. 2701-2740.
[16] *Carpets & Rugs,* 175 DPR, pág. 632.
[17] 26 LPRA § 2716a.
[18] 26 LPRA § 2716b. Énfasis nuestro.

(1) **La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación**.
(2) En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de esta sección, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.
(3) El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma.

En *Com. Seguros P.R.* v. *Gen. Accident Ins. Co.*,[19] se estableció que el término máximo de noventa (90) días para la resolución de una reclamación se contará a partir del momento en que el asegurado presenta la reclamación.

A su vez, nuestro ordenamiento jurídico ha reconocido que una reclamación se entiende resuelta una vez la aseguradora notifica al asegurado el ajuste final de la reclamación presentada. Sin embargo, el asegurador cumple con su obligación cuando la oferta es razonable. Conforme a ello, de existir controversia sobre el ajuste, el Comisionado de Seguros tendrá que decidir.[20] **Al momento de evaluar una reclamación es obligación del asegurador realizar una investigación diligente** que incluya: 1) determinar si el evento damnificador ocurrió durante la vigencia de la póliza; 2) **determinar si el asegurado reclamante tenía un interés asegurable**; 3) determinar si la propiedad damnificada es aquella descrita en las declaraciones; 4) confirmar si las perdidas reclamadas no están sujetas a exclusiones de riesgos, y 5) investigar si el daño fue causado por negligencia de un tercero, de modo tal que el asegurador pueda subrogarse en los derechos de resarcimiento de su asegurado.[21] No es hasta que el asegurador

---

[19] 132 DPR 543, 551 (1993).
[20] *Carpets & Rugs*, 175 DPR, pág. 632.
[21] Véase, R. Cruz, *Derecho de Seguros*, San Juan, Pubs. JTS, 1999, Sec. 20.3, págs. 237-238. Énfasis nuestro.

evalúa todo estos aspectos que se encuentra en posición para resolver una reclamación de forma final.

Se ha reconocido que una reclamación puede ser resuelta de forma definitiva de las siguientes maneras: 1) emitiendo el pago total de la reclamación; 2) expresando la denegatoria escrita y fundamentada de la reclamación, o 3) **mediante la notificación de una oferta razonable** que no es otra cosa que el estimado de los daños que hace la aseguradora.[22] **Si el asegurador elige cumplir con su obligación mediante el envió de una oferta razonable, la oferta constituye el estimado del asegurador sobre los daños sufridos por el asegurado**. Por tanto, la aseguradora está notificando que después de una investigación diligente, un análisis de los hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones, y un estudio realizado por el ajustador de reclamaciones del asegurador, concluyó que la póliza cubre los daños reclamados en las cantidades incluidas en la comunicación.[23]

Cónsono con lo anterior, **el asegurador no puede retractarse del ajuste que la ley lo obligó a enviar a su asegurado**. Únicamente se permiten excepciones, cuando el reclamante actúa fraudulentamente o existen circunstancias extraordinarias que el asegurador no pudo descubrir **a pesar de que realizó una investigación diligente**.

En cuanto al fraude, es norma reiterada que no se presume.[24] El mismo debe ser demostrado por la parte promovente con certeza razonable, esto es, con preponderancia de la evidencia que satisfaga la conciencia del juzgador.[25] En virtud de ello, nuestro más alto Foro razonó que permitirle al asegurador retractarse del ajuste sin que estén presentes las excepciones, circunvalaría el término en el que

---

[22] Carpets & Rugs, 175 DPR, pág. 634.
[23] Íd., pág. 635.
[24] *Pardo* v. *Sucn. Stella*, 145 DPR 816, 825 (1998).
[25] *González* v. *Quintana*, 145 DPR 463 (1998)

está obligado a investigar y resolver la reclamación causando incertidumbre en los asegurados. Siendo así, el asegurador podría cumplir artificialmente con el término impuesto en el Código de Seguros para evitar sanciones y poder retractarse de los daños que estimó originalmente. Además, se le impondría la carga al asegurado de litigar partidas que la aseguradora encontró procedentes inicialmente.[26]

III.

Subsanado el primer error señalado por PRAPI, luego de que la Hon. Rice Dilmé presentara su *Comparecencia Especial* el 18 de enero de 2022 en cumplimiento con la Regla 36.4 de Procedimiento Civil, atendemos los siguientes señalamientos de error. Por estar íntimamente relacionados discutimos en conjunto el segundo y cuarto error planteados.

En diversas ocasiones se ha establecido que bajo los contratos de seguros **las ofertas emitidas por el asegurador son una manera de resolver de forma definitiva una reclamación**. Igualmente, que **una aseguradora no puede retractarse del ajuste que informó al asegurado**.[27] Del expediente se desprende que, luego de One Alliance realizar los ajuste, le extendió la oferta sobre el *1st Claim Submission* a PRAPI. Cuando One Alliance emitió su oferta notificó que **después de una investigación diligente**, la Póliza cubría los daños reclamados por PRAPI en el *1st Claim Submission.* Dicha oferta fue aceptada el 20 de septiembre de 2018 por PRAPI y pagada correctamente por One Alliance, el 26 de septiembre de 2018 mediante los dos (2) cheques que emitió.

Ahora bien, en cuanto al *2nd Claim Submission* quedó establecido que One Alliance **realizó el ajuste y ofreció pagarle a**

---

[26] Íd., págs. 635-636.
[27] *Carpets & Rugs* v. *Tropical Reps,* 175 DPR 615 (2009).

**PRAPI** por 29 de las 64 propiedades que lo componían,[28] y se **remitió el correspondiente Proof of Loss**. Por tanto, no tiene razón One Alliance al argumentar que se trataba de ajustes parciales. Ello es inconsecuente a los fines de la doctrina reseñada. One Alliance tiene que emitir el pago sobre las propiedades citas en la Región Judicial de Fajardo que fueron parte del ajuste emitido en el *2nd Claim Submission*.

Aunque PRAPI también imputa que, erró el Foro primario al no ordenar el ajuste del restante de la reclamación, solo podemos intervenir con las propiedades sitas en la Región Judicial de Fajardo.[29] A tales fines, enfatizamos, el plazo de noventa (90) días que establece el Código de Seguros desde que se presentó la reclamación para que la aseguradora investigue y realice el ajuste. Término que comenzó a trascurrir el 2 de octubre de 2017. Conforme a ello, los errores alegados fueron cometidos.

En cuanto al tercer error, si bien es cierto que One Alliance alegó fraude por parte de PRAPI, éste debió ser diligente y levantar cualquier alegación cuando realizó la investigación de la reclamación y el ajuste, no posteriormente. Nuestro ordenamiento jurídico ha sido enfático en que, al emitir la oferta, el asegurador expresa haber sido diligente y haber realizado una investigación sobre la reclamación incoada.

Además, no consideramos que One Alliance haya demostrado que surgieron circunstancias extraordinarias que le fueran imposibles descubrir al momento de emitir el ajuste. Como puede colegirse, One Alliance **más de un año luego de emitir la oferta** es que le remite la misiva a PRAPI anulando las pólizas. Siendo así, no

---

[28] De las sesenta y cuatro (64) propiedades que componen el *2nd Claim Submission* solo dos (2) pertenecen a la Región Judicial de Fajardo y, por ende, son pertinentes a este recurso.

[29] Según mencionado, en el *2nd Claim Submission* hay dos (2) propiedades bajo la Región Judicial de Fajardo de un total de sesenta y cuatro (64) propiedades. Mientras que, en el *3rd Claim Submission* hay una (1) propiedad que pertenece a esta región de las treinta y cuatro (34) que componen la reclamación.

puede ser suficiente una mera alegación de fraude para evadir su obligación de emitir el pago de una deuda que reconoció luego de una investigación diligente. Permitirlo sería atentar contra el principio de no imponerle al asegurado la carga de litigar partidas que la aseguradora encontró procedentes, inicialmente. Erró, por tanto, el Tribunal de Primera Instancia, al declarar No Ha Lugar la *Moción de Sentencia Sumaria* incoada por PRAPI.

IV.

Por los fundamentos antes expuestos, se *expide* el recurso y se *revoca* la *Resolución* recurrida. Se declara con lugar la *Moción de Sentencia Sumaria Parcial* y, en consecuencia, se ordena a One Alliance emitir los pagos sobre los ajustes del *2nd Claim Submission*. Se ordena la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Grana Martínez disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones