ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **KATIRIA'S CAFÉ, INC.**<br>PETICIONARIA(S)<br><br><br>V.<br><br><br>**MUNICIPIO AUTÓNOMO DE SAN JUAN**<br>RECURRIDA(S) | **KLRA202300482** | ***Revisión de Decisión Administrativa***<br>procedente de la Oficina de Permisos del Municipio Autónomo de San Juan<br><br>Caso Núm.<br>**063-077-947-18**<br><br><br>Sobre:<br>Multa Administrativa<br>(No. de Boleto: 002949) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 27 de marzo de 2024.

Comparece ante este Tribunal de Apelaciones, **KATIRIA'S CAFÉ, INC.** (**KATIRIAS CAFÉ**) mediante una *Revisión Judicial* instada el 13 de septiembre de 2023. En su escrito, nos solicita que revisemos la *Multa Administrativa* expedida el 7 de julio de 2023 por la Oficina de Permisos del **MUNICIPIO AUTÓNOMO DE SAN JUAN** (**MUNICIPIO**) por la cuantía de dos mil dólares ($2,000.00).[1] En la multa administrativa, se alegó que **KATIRIAS CAFÉ** opera una "barra como uso principal".

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

– I –

El **7 de julio de 2023**, el inspector Carlos Ríos, de la Oficina de Permisos del **MUNICIPIO,** visitó el establecimiento **KATIRIAS CAFÉ.** Como

---

[1] Véase Apéndice de la *Revisión Judicial*, págs. 1- 2.

Número Identificador:
SEN2024_____

parte de su inspección determinó la comisión de una falta administrativa a la Ley 161- 2009, según enmendada, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*.[2] Así las cosas, emitió el boleto número 002949, con número de catastro 063 – 077 – 947 – 18, e impuso una multa por la suma de dos mil dólares ($2,000.00).[3]

El **31 de julio de 2023**, KATIRIAS CAFÉ presentó una *Solicitud de Reconsideración* ante la Oficina de Permisos del MUNICIPIO.[4] Adujo que el negocio se dedica a la venta de alimentos preparados como negocio principal y el expendio o venta de bebidas alcohólicas es uno accesorio. Además, arguyó que la *Multa Administrativa* infringió su debido proceso de ley, en su vertiente procesal, debido a que no proveyó la oportunidad de solicitar una audiencia, en la cual pudiese demostrar las razones por las cuales la falta administrativa es improcedente.

Ante la inacción del foro administrativo, el 13 de septiembre de 2023, KATIRIAS CAFÉ acudió ante este Tribunal de Apelaciones mediante *Revisión Judicial.* En su recurso, señaló el siguiente error:[5]

> Erró la parte recurrida al emitir una multa contra la peticionaria y luego negarle el derecho a una vista administrativa en donde esta pueda presentar evidencia a su favor y confrontar la prueba con la que cuenta el Municipio para sostener dicha penalidad.

Ante ello, el 15 de septiembre de 2023, este foro revisor decretó *Resolución* mediante la cual concedimos un término perentorio de treinta (30) días para presentar su(s) alegato(s) en oposición al recurso al MUNICIPIO.

Consecuentemente, el 3 de noviembre de 2023, dictaminamos *Resolución* confiriendo un plazo de veinte (20) días para presentar copia fiel y exacta del expediente administrativo concerniente al boleto número 002949 expedido el 7 de julio de 2023, por el señor Carlos Ríos, inspector de

---

[2] 23 LPRA § 9011 y ss.

[3] Véase Apéndice de la *Revisión Judicial*, págs. 1 – 2.

[4] Cabe mencionar que el MUNICIPIO tuvo un receso administrativo durante la semana de 24 de julio de 2023 hasta 28 de julio de 2023.

[5] Transcurrido el plazo de quince (15) días desde la presentación de la *Solicitud de Reconsideración,* sin que se expresara el MUNICIPIO, se consideró el petitorio rechazado de plano.

la Oficina de Permisos; y apercibiendo sobre incumplimiento al **MUNICIPIO.**

El pasado 26 de febrero, pronunciamos *Resolución* proporcionando un plazo final de veinte (20) días para suministrar copia fiel y exacta del expediente administrativo. Al día de hoy, no ha comparecido el **MUNICIPIO.**

Evaluado concienzudamente el expediente del caso; nos encontramos en posición de resolver. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

– II –

– A –

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[6] Su sección 4.1 instituye la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[7]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[8] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la razonabilidad de la actuación de la agencia.[9] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[10]

No obstante, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[11] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a

---

[6] Conocida como la Ley Núm. 38 de 30 de junio sde 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[7] 3 LPRA § 9671.
[8] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004). Véase, además Javier A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones Situm (2017), págs. 304 – 306.
[9] *Fonte Elizondo v. F & R Const.*, 196 DPR 353 (2016); *Otero v. Toyota*, 163 DPR 716 (2005). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 543.
[10] *Pérez López v. Depto. Corrección*, 208 DPR 656, 660 (2022).
[11] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).

considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[12]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[13] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[14]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[15] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[16] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias

---

[12] *OCS v. Point Guard Ins.,* 205 DPR 1005, 1028 (2020).
[13] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016).
[14] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).
[15] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[16] *Otero v. Toyota, supra,* pág. 728.

administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[17] Es decir, estas determinaciones serán respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas.[18] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su *consideración*".[19] A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[20] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[21]

De otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[22] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[23]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[24] A *contrario sensu,* los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia*

---

[17] *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019).
[18] *Graciani Rodríguez v. Garage Isla Verde, supra,* pág. 128.
[19] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).
[20] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[21] *Id.*
[22] *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).
[23] *Pacheco v. Estancias, supra.*
[24] *García Reyes v. Cruz Auto Corp., supra,* pág. 893.

*sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[25]

**– B –**

La Constitución del Estado Libre Asociado de Puerto Rico reconoce como derecho fundamental del ser humano el derecho a la vida, la libertad y el disfrute de la propiedad.[26] Igualmente, prescribe que ninguna persona será privada de su libertad o propiedad sin un *debido proceso de ley*.[27] De manera similar es reconocido en las Enmiendas V y XIV de la Constitución de los Estados Unidos. El *debido proceso de ley* presenta dos (2) vertientes; la *sustantiva* y la *procesal*. En su modalidad *sustantiva*, procura proteger y salvaguardar los derechos fundamentales de la persona.[28] Por otro lado, en su vertiente *procesal* propicia al Estado ejercer su poder contra una persona, siempre y cuando le garantice el derecho a un procedimiento imparcial y justo, en el cual el individuo pueda cuestionar las razones y legalidad de la acción.[29]

En ese marco, para satisfacer las exigencias del *debido proceso de ley*, en su vertiente *procesal*, se deben cumplir los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el récord.[30]

Por tanto, **ese derecho que tienen las personas a ser oídas, antes de ser despojadas de algún interés protegido, es un requisito fundamental del *debido proceso de ley*.**[31] El ejercicio de ese derecho tiene que concederse en el momento y en el modo adecuado.[32]

---

[25] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177 (2009).
[26] Art. II, Sec. 7, Constitución del Estado Libre Asociado de Puerto Rico, 1 LPRA sec. 7.
[27] *Íd.*
[28] *Rodríguez Rodríguez v. ELA*, 130 DPR 562 (1992).
[29] *Almonte et al. v. Brito*, 156 DPR 475 (2002); *Rivera Rodríguez & Co. v. Lee Stowell*, 133 DPR 881 (1993).
[30] *Rivera Rodríguez & Co. v. Lee Stowell*, supra, pág. 889.
[31] *Íd.*, (énfasis nuestro).
[32] *Rivera Rodríguez & Co. v. Lee Stowell*, supra.

Se ha identificado como propósitos del *debido proceso de ley*: dar participación a la ciudadanía; proteger a la ciudadanía contra decisiones arbitrarias; proveerle información al Estado en su quehacer de hacer justicia y legitimar la acción institucional al concederle una oportunidad de participación a aquel que podría verse afectado.[33] De esta modo, se le asegura al ciudadano que la agencia ha tomado en consideración toda la evidencia desfilada y su participación en la audiencia sea realmente efectiva.[34] Esto resulta cónsono, a su vez, con el requisito de que las decisiones administrativas reflejen que el organismo ha considerado y resuelto los conflictos de prueba, y ha determinado tanto los hechos probados como los que fueron rechazados.[35]

La *revisión judicial* permite evaluar el cumplimiento de los foros administrativos con los mandatos constitucionales que gobiernan su función como, por ejemplo, que respeten y garanticen los requerimientos del *debido proceso de ley* que le asiste a las partes.[36] Como parte de las determinaciones administrativas sujetas a *revisión judicial*, se encuentran aquellos procedimientos mediante los cuales una agencia impone el pago de multas por violaciones a la ley o reglamento cuya implantación o promulgación le ha sido delegada.[37] Empero, la *revisión judicial* se limitará a evitar que las agencias actúen en forma ilegal, arbitraria, en exceso de lo permitido por ley o en ausencia de *evidencia sustancial* que justifique la medida impuesta, en otras palabras, a evitar que éstas actúen movidas por el capricho o en exceso "de su discreción".[38]

---

[33] *San Gerónimo Caribe Project v. ARPE*, 174 DPR 640 (2008); *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109 (1996).
[34] *Asoc. Fcias. Com. v. Depto. de Salud*, 156 DPR 105 (2002).
[35] *Mun. de San Juan v. JCA*, 152 DPR 673 (2000); *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425 (1997).
[36] *Comisión Ciudadanos v. GP Real Property*, 173 DPR 998 (2008).
[37] *Comisionado de Seguros v. Prime Life Partners Inc.*, 162 DPR 334, 340-341 (2004); Assoc. Ins. Agencies, Inc. v. Com. Seg. PR, supra, pág. 441.
[38] *Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company*, 145 DPR 226, 234 (1998).

– III –

En el caso de marras, KATIRIAS CAFÉ señaló como único error que el MUNICIPIO incidió al expedir una multa administrativa por la cantidad de dos mil dólares ($2,000.00), por presuntamente vender bebidas alcohólicas como "uso principal". KATIRIAS CAFÉ aseguró que las ventas principales del establecimiento son los alimentos preparados y el expendio de alcohol es una actividad accesoria a la venta de comida.

Cuando evaluamos la totalidad del expediente no podemos – razonablemente - hallar prueba que nos demuestre que KATIRIAS CAFÉ, en efecto, posee permiso para la venta de alimentos preparados. En nuestro expediente, **no** obra copia del permiso de uso otorgado a KATIRIAS CAFÉ. Ante la ausencia de un documento fundamental como lo es el permiso de uso, se nos dificulta evaluar si, en efecto, el establecimiento poseía autorización para vender bebidas alcohólicas como producto accesorio o si, por el contrario, se estaba utilizando como barra principal. Por lo que, no nos ha presentado prueba alguna que pueda rebatir la presunción de corrección que cobija el dictamen administrativo. Ante esta situación, brindamos la deferencia al organismo administrativo por su *expertise*; y nos abstenemos de intervenir.

- IV –

Por los fundamentos antes expuestos, ***confirmamos*** la *Multa Administrativa* emitida el 7 de julio de 2023 por la Oficina de Permisos del MUNICIPIO AUTÓNOMO DE SAN JUAN.

Lo acordó el Tribunal, y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones